The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Antonio S. FARRELL, Defendant–Appellant.

No. 97CA2236.

Colorado Court of Appeals, Div. IV.

Feb. 17, 2000.

Certiorari Granted Oct. 10, 2000.

Ken Salazar, Attorney General, Laurie A. Booras, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, James Grimaldi, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Antonio S. Farrell, appeals the judgment of conviction entered upon jury verdicts finding him guilty of murder in the first degree (intentional/deliberate), murder in the first degree (felony murder), robbery of an at-risk adult, aggravated robbery, second degree kidnapping, two counts of second degree burglary, two counts of conspiracy, first degree criminal trespass, and theft. He also appeals the sentences imposed. We reverse and remand for a new trial.

Defendant and his sixteen-year-old companion (codefendant) were arrested by police

investigating the disappearance of an elderly woman. The codefendant told police that he and defendant had kidnapped the woman, driven her to an isolated rural area, tied her to a concrete structure, piled heavy objects on top of her, and left her. According to the codefendant, the two youths then drove to the victim's home and broke in. Over the next three days, they ransacked the house and took jewelry, money, and other valuables. They also broke into the garage of another house in the area and stole guns.

Based on the codefendant's description of where the woman had been left, the police went to the site and discovered her body. Defendant and the codefendant were charged with first degree murder and other offenses in connection with her death. In addition, the two were charged with burglary and related offenses in connection with the theft of guns from the second victim's garage.

Defendant and the codefendant were tried separately, and the codefendant had already been convicted by the time of defendant's trial. The jury found defendant guilty of the charged offenses relating to both victims. It rejected his affirmative defense of insanity.

For the offenses involving the woman, defendant received a sentence of life without the possibility of parole on the merged murder counts, along with concurrent sentences for kidnapping, aggravated robbery, second degree burglary, and conspiracy, and a consecutive 32–year sentence for the robbery of an at-risk adult. On the convictions for the offenses against the second victim, the court imposed concurrent sentences for conspiracy, first degree criminal trespass, and theft, and a consecutive 24–year sentence for second degree burglary.

## I.

Defendant contends that, under controlling United States Supreme Court and Colorado Supreme Court decisions, the admission against him of his codefendant's statement to the police violated his constitutional right of confrontation and requires reversal of his conviction. We agree.

Prior to trial, defendant filed a motion in limine to prevent the prosecutor from introducing the statement into evidence. In the statement, the codefendant gave a detailed account of both his and defendant's involvement in the charged offenses.

After reviewing the statement and hearing argument, the court ruled that the statement would be admitted. It found that the statement was against the codefendant's interest and that no reasonable person in his position would have made the statement unless he believed it to be true. The court further noted, without elaboration, that the statement's reliability had "corroboration ... [as] to the basics."

In accordance with the court's ruling, the jury was shown a videotape of the police interview with the codefendant. In addition, each of the jurors received a copy of the 91–page transcript of the interview.

### A.

Both the United States Constitution and the Colorado Constitution guarantee defendants in criminal cases the right to confront and cross-examine witnesses. U.S. Const. amend. VI, XIV; Colo. Const. art. II, § 16. The United States Supreme Court has recognized that this right is "uniquely threatened" when an accomplice's confession is sought to be introduced against such a defendant without the benefit of cross-examination. *Lee v. Illinois*, 476 U.S. 530, 541, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514, 526 (1986); *see also People v. Dement*, 661 P.2d 675 (Colo.1983).

After the trial in this case, the Supreme Court announced *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), in which it concluded that the admission of a non-testifying accomplice's confession violated the defendant's Sixth Amendment right to be confronted with the witnesses against him.

In *Lilly*, the Virginia Supreme Court—like the trial court in this case—had concluded that the challenged statements were reliable, and thus admissible, because (1) the speaker was implicating himself as a participant in crimes and (2) elements of his statements were independently corroborated by other evidence. The Supreme Court reversed. After reaffirming its longstanding recognition that accomplice statements that shift or

spread the blame to a criminal defendant are inherently unreliable, the Court acknowledged that the presumption of unreliability may be rebutted, but continued:

> Nonetheless, the historical underpinnings of the Confrontation Clause and the sweep of our prior confrontation cases offer one cogent reminder: It is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when the statements are given under conditions ... [where] the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing.

*Lilly v. Virginia, supra,* 527 U.S. at 137, 119 S.Ct. at 1900, 144 L.Ed.2d at 135.

*Lilly* is a plurality opinion. Thus, the People argue that its precedential effect is limited. However, all the justices in *Lilly* agreed that reversal was required; and our review of the various concurring opinions, as well as the other Supreme Court cases on which *Lilly* relies, leads us to conclude that the propositions for which it is cited here represent the opinion of the majority of the Court. Thus, *Lilly* is binding on us.

After the trial in this case, but before *Lilly,* the Colorado Supreme Court also issued two decisions addressing the issue presented here.

■ In *People v. Newton,* 966 P.2d 563 (Colo.1998), the court outlined a three-part test that must be satisfied before a statement inculpating a defendant may be admitted: (1) the witness must be unavailable, as required by CRE 804(a); (2) the statement must tend to subject the declarant to criminal liability and must be the kind of statement that a reasonable person in the declarant's position would not have made unless the person believed it to be true; and (3) the People must show by a preponderance of the evidence that corroborating circumstances demonstrate the trustworthiness of the statement.

■ As to the third requirement, the supreme court stated—consistent with *Lilly*—that a trial court should limit its analysis to the circumstances surrounding the making of the statement and may not rely on other independent evidence that also implicates the defendant. In so holding, the court noted that its prior decision permitting consideration of independent corroborating evidence had been "effectively overruled" by *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). *People v. Newton, supra,* 966 P.2d at 575 n. 15.

Appropriate factors for a court to consider in conducting the trustworthiness inquiry include: where and when the statement was made, what prompted the statement, how the statement was made, and what the statement contained. *People v. Newton, supra.*

Finally, in *Blecha v. People,* 962 P.2d 931 (Colo.1998), the supreme court held that the admission of a codefendant's hearsay statement in a murder prosecution violated the defendant's right to confrontation and constituted constitutional error, but that the error was harmless beyond a reasonable doubt.

■ Under these cases, the codefendant's statement in this case was not admissible. Although, as the trial court found, the statement was clearly against the codefendant's penal interest, this fact was not sufficient under *Lilly* to establish reliability. *See Lilly v. Virginia,* 527 U.S. at 138–139, 119 S.Ct. at 1901, 144 L.Ed.2d at 135–36 ("The Commonwealth's next proffered basis for reliability— that[the accomplice] knew he was exposing himself to criminal liability—merely restates the fact that portions of his statements were technically against penal interest.... '[T]hat a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self inculpatory parts' ").

Nor was it sufficient that other evidence corroborated portions of the statement. *See Lilly v. Virginia, supra,* 527 U.S. at 138, 119 S.Ct. at 1901, 144 L.Ed.2d at 135, quoting *Idaho v. Wright, supra* ("[t]o be admissible under the Confrontation Clause ... hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial"); *People v. Newton, supra.*

Although the grounds relied on by the trial court were thus insufficient to permit admission of the statement, we must consider whether the statement was nevertheless admissible because the circumstances surrounding the making of the statement demonstrated its trustworthiness and reliability. *See Lilly v. Virginia, supra* (reviewing courts should independently review whether the government's proffered guarantees of trustworthiness satisfied the demands of the Confrontation Clause). We conclude that the statement was not admissible on this basis.

The statement at issue was made while the codefendant, then sixteen years old, was in police custody. No parent, guardian, or attorney was present. Early on, the police told the codefendant that defendant had already told others about the crime. *See Lee v. Illinois, supra* (codefendant's confession was unreliable in part because it was elicited only after he was told that defendant had already implicated him).

Further, the statement was not simply a narrative, but was the product of police questioning, including leading questions (*e.g.,* Q: "Did [defendant] say he doesn't remember because he doesn't think he has a life anymore and he doesn't give a damn, cause you obviously care?" A: "Yeah"). *See Lee v. Illinois, supra* (fact that confession was given in response to police questions was a further indicator of unreliability); *Lilly v. Virginia, supra.*

As the People point out, the codefendant was not seeking to exculpate himself when he gave the statement. However, this fact is not enough, without more, to render the statement reliable. *Lilly* makes clear that accomplices' confessions that not only "shift," but also "spread," blame are presumptively unreliable. *Lilly v. Virginia, supra,* 527 U.S. at 137, 119 S.Ct. at 1900, 144 L.Ed.2d at 135. Further, although the codefendant did not minimize his own involvement, he pointed to defendant as the leader at critical points during the commission of the offenses. For example, he said that it was defendant who did most of the talking when they initially approached the woman, who had the idea to take her out to the country and leave her so that she could not report that they had stolen

her car, who drove the car to the site, and who tied the victim up when they got there.

Nor do we agree with the People that the codefendant's statement could be deemed reliable based on similarities between it and statements made by defendant to other individuals about the crimes. The latter statements have nothing to do with the circumstances surrounding the codefendant's confession—which, under *Lilly* and *Newton,* is to be the focus of the reliability inquiry.

 Moreover, even if the statements of defendant upon which the People rely may still be considered after *Lilly* and *Newton,* they would not amount to "interlocking confessions" sufficient to establish reliability under *Lee v. Illinois, supra.*

In *Lee,* the Court cautioned: "If those portions of the codefendant's purportedly 'interlocking' statement which bear to any significant degree on the defendant's participation in the crime are not thoroughly substantiated by the defendant's own confession, the admission of the statement poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment." *Lee v. Illinois, supra,* 476 U.S. at 545, 106 S.Ct. at 2064, 90 L.Ed.2d at 529.

The statements of defendant cited by the People touch on only a small portion of the events recounted in the codefendant's confession, and in no way "thoroughly substantiate" that confession, as *Lee v. Illinois* requires. In the first statement, defendant told a detention facility official about his and the codefendant's initial encounter with the woman victim, but said nothing about what happened after they drove off with her in the car. The second statement was recounted by a witness who had been with defendant and the codefendant at the houses of both victims and who testified that "they" –defendant and the codefendant—had told him they had taken the victim's car and left her in a field. However, this witness did not specify which individual had told him about these matters, but, instead, consistently referred to both men, even when the prosecutor sought to focus his questioning on statements by defendant (*e.g.,*

"Q: [D]id the defendant, Tony Farrell, tell you what he did with the old lady whose car they were in? A: Yes, they did"). Not only does the testimony of this witness relate to only a small part of the codefendant's statement, but it does not even indicate whether the statements to which the witness testified were made by defendant or the codefendant.

### B.

Having concluded that admission of the statement was error, we must next consider whether the error can be deemed harmless.

■ Because the error violated defendant's constitutional right of confrontation, it requires reversal unless we can conclude that it was harmless beyond a reasonable doubt. To establish this, the People bear the burden of proving that the statement did not contribute to defendant's conviction. If there is a reasonable probability that defendant could have been prejudiced by the error, the error cannot be harmless. *Blecha v. People, supra.*

■ In *Blecha,* the supreme court reiterated the factors that should be considered in making the harmless error determination:

An appellate court should examine a number of factors, including the importance of the witness' testimony to the prosecution's case, whether the testimony was cumulative, the presence or absence of corroborating or contradictory evidence on the material points of the witness' testimony, the extent of the cross-examination otherwise permitted, and the overall strength of the prosecution's case.

*Blecha v. People, supra,* 962 P.2d at 942 (quoting *Merritt v. People,* 842 P.2d 162 (Colo.1992)).

■ Applying these factors here, we cannot conclude that admission of the codefendant's statement was harmless error. Although there was other evidence, including physical evidence, that linked defendant to the crimes, the codefendant's statement was the primary, if not the sole, evidence detailing defendant's specific acts and demonstrating his mental state during the commission of the crimes. Whether defendant was acting intentionally or knowingly, or, conversely, whether he was unable to do so because of a mental disease or defect, was critical to the determination of his guilt as to all the charged offenses, not only as to murder after deliberation.

In contrast to *Blecha,* where the absence of any reference to the inadmissible statements during the prosecutor's opening or closing arguments led the supreme court to conclude that the statements were of minimal importance, the statement at issue here was central to the prosecution's case. Indeed, the prosecutor relied extensively on the statement during his opening, even quoting or paraphrasing language from it (*e.g.,* "We were planning it anyway;" "We weren't concerned about her coming back. You know, she was old, you know"). During closing argument, the prosecutors again referred to the statement repeatedly, particularly to those portions demonstrating that defendant was acting knowingly and intentionally, and that he knew right from wrong.

Because we cannot conclude beyond a reasonable doubt that the codefendant's statement "did not contribute to" defendant's convictions, *see Blecha v. People, supra,* we are compelled to reverse his convictions and remand the cause to the trial court for a new trial.

Based on our resolution of this issue, we do not address defendant's argument that the statement was also inadmissible because the codefendant's unavailability had not been established.

### II.

We also address briefly those additional issues raised by defendant that are likely to recur on remand.

### A.

■ Defendant contends that the trial court's instruction on the presumption of sanity impermissibly shifted the burden of proof to him. The same argument regarding the same instruction was considered and rejected in *People v. Bielecki,* 964 P.2d 598 (Colo.App. 1998). We agree with the analysis and the result reached by the panel in *Bielecki* and,

accordingly, perceive no error in the challenged instruction.

### B.

Defendant next contends that the trial court impermissibly relieved the jury of its obligation to find that he caused the victim's death through criminal conduct when, in connection with its instruction on the elements of deliberative murder, it defined "cause" as "that act or failure to act which in natural and probable sequence produced the claimed injury." Defendant argues that inclusion of the phrase "failure to act" permitted the jury to convict him of murder if he simply remained passive while the codefendant killed the victim.

Contrary to defendant's contention, the asserted error here does not amount to a structural error that would, if established, require automatic reversal. *See Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Rather, because defendant did not object to the challenged instruction in the trial court, reversal would be warranted only if the instruction amounted to plain error—that is, if there is a reasonable possibility that the instruction contributed to the defendant's conviction. *People v. Cowden*, 735 P.2d 199 (Colo.1987).

Failure to instruct properly on an element of a crime does not constitute plain error where that element is not contested at trial. *People v. Cowden, supra.*

Under these standards, the asserted instructional error here does not amount to plain error. The prosecution did not put on evidence or argue that it was defendant's failure to act that caused the victim's death; rather, the prosecutor emphasized that defendant was being tried for his own acts, not simply as one who had aided and abetted the codefendant.

Defendant has thus not demonstrated a reasonable possibility that the tendered instruction contributed to his conviction. *See People v. Cowden, supra.* Nevertheless, if, on remand, defendant tenders an otherwise correct instruction omitting the "failure to act" language and the evidence does not af-

ford a basis for conviction based on a failure to act, the court should omit this phrase from its instruction.

### C.

We also disagree with defendant's contention that the trial court abused its discretion by admitting evidence that he had stolen cars in the past.

Evidence that a defendant committed another crime, wrong, or act is not admissible to prove the defendant's guilt with respect to the crime charged. However, such evidence may be admissible for other purposes, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. CRE 404(b).

To determine whether evidence of prior crimes or bad acts is admissible, the trial court is to consider whether the proffered evidence relates to a material fact; if so, whether it is logically relevant; whether the logical relevance is independent of the intermediate prohibited inference that the defendant has a bad character; and whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *People v. Spoto*, 795 P.2d 1314 (Colo.1990).

The trial court here concluded that the proffered evidence was relevant to various disputed issues, including defendant's mental state, and that the other prerequisites for admission under *Spoto* were met. It gave appropriate limiting instructions when the evidence was admitted and again at the conclusion of the evidence.

We agree that the evidence was admissible to rebut defendant's contention that, because of a mental condition, he was unable to form the requisite culpable mental state for the charged offenses. The evidence made it more probable than not that he had the conscious objective to steal the victim's car and that he intended the consequences of his actions. *See People v. Willner*, 879 P.2d 19 (Colo.1994)(where defendant's intent was disputed, evidence that defendant had fired shots at vehicles in the past was admissible to show that he did not act impulsively, but

rather intentionally after deliberation, in shooting the victim). If defendant's mental state is again in dispute on retrial, evidence of the prior car thefts may again be admitted for this purpose.

### D.

We do, however, agree with defendant that concurrent, not consecutive, sentences should have been imposed on his convictions for aggravated robbery and robbery of an at-risk adult.

Unless multiple victims are involved, concurrent sentences are required where two or more convictions are based on the same act or series of acts arising from the same criminal episode and the evidence supporting the counts is identical. Section 18–1–408(3), C.R.S.1999; *People v. Page,* 907 P.2d 624 (Colo.App.1995).

Here, the prosecution offered identical evidence to establish defendant's guilt as to both robbery charges. If, on remand, defendant is again found guilty of aggravated robbery and robbery of an at-risk adult and the convictions are supported by identical evidence, the court is to impose concurrent sentences on these two convictions.

### E.

Defendant argues, the People concede, and we agree that the mittimus may not reflect more than one first degree murder conviction. *See People v. Glover,* 893 P.2d 1311 (Colo.1995)(court may not enter judgments of conviction for felony murder and murder after deliberation for the murder of a single victim). If defendant is again convicted of more than one count of first degree murder on remand, the mittimus must reflect only a single murder conviction.

### F.

Finally, we agree with defendant that the trial court erred in imposing the maximum aggravated-range sentence on the conviction for second degree burglary against the second victim without complying with § 18–1–105(7), C.R.S.1999, which requires findings detailing the specific extraordinary circumstances which warrant a sentence out-

side the presumptive range. Defendant points out that the incident giving rise to this conviction involved a different victim and was not attended by what he characterizes as the "unusually grim facts" surrounding the kidnapping and murder of the elderly woman.

On remand, if defendant is again convicted of second degree burglary as charged in the second case and the trial court again imposes a sentence outside the presumptive range on that conviction, the court is to make findings as required by § 18–1–105(7).

The judgment is reversed, and the cause is remanded for further proceedings in accordance with the views expressed here.

Judge MARQUEZ and Judge ROY concur.