The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Jeremiah M. BARNUM, Defendant–Appellant.

No. 99CA1582.

Colorado Court of Appeals, Div. I.

Jan. 18, 2001.

Certiorari Granted June 11, 2001.*

* Justice COATS did not participate.

A. William Ritter, Jr., District Attorney, Robert J. Whitley, Deputy District Attorney, Denver, CO, for Plaintiff–Appellee.

The Law Offices of Peter R. Bornstein, Peter R. Bornstein, Denver, CO; Thomas J. Hammond P.C., Thomas J. Hammond, Denver, CO, for Defendant–Appellant.

Opinion by Judge ROTHENBERG

The People appeal an order of the trial court, acting through a successor judge, granting a motion for a new trial to defendant, Jeremiah M. Barnum, based on alleged errors committed by the judge who conducted the trial. Because we conclude one error required a new trial, we affirm.

I.

On November 18, 1997, Oumar Dia, an immigrant from West Africa, was shot and killed while he sat on a bus stop bench in downtown Denver. The shooting and the events preceding it were witnessed by four people: a female who was also waiting for a bus and also was shot; two University of Denver students who were walking across the street from the bus stop; and a security guard at a building on the other side of the street who had just arrived for his shift and noticed the people at the bus stop.

According to the testimony adduced at trial from the female victim, the two assailants accosted Dia while he sat on the bench at the bus stop. Both of them verbally taunted Dia with racial slurs and struck him, allegedly telling Dia that: "Niggers don't belong downtown. This is white territory." The larger man (later identified as defendant) grabbed, punched, and choked Dia and also frisked his pockets.

Sometime during the assault, the shorter man (later identified as Nathan Thill) pulled a gun and shot Dia several times. The female victim testified that she intervened, challenged the men to a fight, and made them retreat down the street, but they returned to the bench. The larger man then removed something from Dia's pocket, and Thill shot again.

The female victim testified that defendant said, "I (we) got what we came for, let's go," at which time Thill commented that she was a witness. According to her testimony, defendant then said, "Hurry up and shoot the bitch," and Thill shot her, continuing to pull the trigger even after the gun was empty. The female victim was paralyzed as a result of the shooting.

The two men fled in opposite directions, but were seen together shortly after the shootings.

The other three witnesses testified that their attention was called to the incident when they heard the first gun shot. They saw no fight and heard no racial taunting or loud argument. The two students saw the muzzle flash and heard a succession of shots that appeared to be directed at the seated black man. They saw the shooter point the gun at the female victim and shoot her, and saw the assailants run off in opposite directions.

The security guard could see the bus stop from his station inside the building. He heard the shots, ran outside, saw Dia slump over, and saw the two assailants leave in opposite directions. The guard was the first person to reach the crime scene. He saw the female victim lying near the curb of the street a distance from Dia and heard her say: "I don't know why he shot me."

Thill was arrested the next day and later gave two confessions—one to the police and one to a television news reporter, which was videotaped. Thill and defendant were tried separately, and over defendant's objection, Thill's videotaped confession was admitted at defendant's trial.

In that videotaped confession, Thill described himself as a white supremacist, a neo-Nazi, and a "skinhead," and he described the shooting as an unplanned event. Thill did not mention a companion. According to him, *he* was walking across the street when he saw the black man on the bus stop bench and decided to take action. He confronted the man and asked him if he were "a nigger" and "prepared to die." He pulled out a gun from his pocket and shot the black man several times. He then saw the female out of the corner of his eye, shot her, and left the scene.

During the defense case, two of defendant's friends testified that he had told them about the incident. Defendant told his friends he had witnessed the murder of the black man and the wounding of the female victim, but claimed that he did not participate and was surprised when Thill shot the victims. According to defendant, he told Thill to leave the black man alone. Defendant also told his friends he ran from the scene and tried to "ditch" Thill, but Thill caught him.

Defendant was convicted of murder after deliberation, first degree assault, attempted murder, and ethnic intimidation. Thereafter, he moved for a new trial, alleging numerous grounds. By the time that motion was heard, the trial judge had retired from the bench and had been replaced by the successor judge pursuant to Crim. P. 25.

The successor judge rejected all but two of the grounds alleged. Based on his reading of the record, the successor judge concluded a new trial was required because: (1) the trial judge erred as a matter of law in admitting Thill's videotaped confession as a statement against penal interest under CRE 804(b)(3); and (2) the trial judge abused his discretion in denying defendant's motion for mistrial based on certain portions of the female victim's testimony at trial.

## II.

The People maintain that the successor court erred in granting defendant a new trial based on the admission of the videotaped confession. They concede the videotaped confession was hearsay, but they contend that the trial judge properly admitted the confession at trial as a statement against penal interest under CRE 804(b)(3), and in any event, that even if its admission was error, it was harmless. We disagree.

## A.

■ A hearsay statement is an out-of-court declaration offered into evidence to establish the truth of the matter asserted. *See* CRE 801. Because the declarant is not in court to explain the statement, hearsay is presumptively unreliable and absent an exception, is inadmissible at trial. *See Blecha v. People*, 962 P.2d 931 (Colo.1998).

■ The proponent of the hearsay statements bears the burden of establishing the foundation for admitting the statements under one of the exceptions. *See Oldsen v. People*, 732 P.2d 1132 (Colo.1986). Trial

courts are given considerable discretion in determining the admissibility of evidence. *See Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984).

CRE 804 allows the admission of a statement against penal interest as an exception to the hearsay rule. However, a prerequisite to such admission is that the declarant be "unavailable" as a witness.

CRE 804(a)(1) does not specify any fixed procedure that a trial court must follow in determining unavailability, but as relevant here, states that a declarant is unavailable as a witness if "exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement."

The preferable method of determining unavailability is to have the declarant come before the court and personally assert the privilege. *See People v. Rosenthal*, 670 P.2d 1254, 1256 (Colo.App.1983). However, some decisions have held the unavailability requirement has been satisfied even where the declarant did not appear before the court. The People rely on those decisions. *See United States v. Flores*, 985 F.2d 770 (5th Cir.1993)(declarant was held to be unavailable where his counsel informed the court in his presence that declarant invoked the privilege); *United States v. Thomas*, 571 F.2d 285 (5th Cir.1978)(declarant's unavailability was "patent" where he was a co-defendant in a joint trial with defendant). *See also People v. Arguello*, 737 P.2d 436 (Colo.App.1987)(trial court did not abuse its discretion in determining a child-victim was unavailable as a witness at defendant's retrial, even though the child did not personally invoke the privilege in court).

In *People v. Rosenthal, supra*, 670 P.2d at 1256, a panel of this court stated that:

> the "unavailability" requirement is not satisfied by the mere suggestion that the absent declarant might attempt to exercise a privilege against testifying. . . . Thus, the declarant must actually invoke the privilege before the trial court, and the trial court must rule that the privilege is available.

Relying on *Rosenthal*, defendant contended in his motion for new trial—and similarly contends on appeal—that the foundational requirement of unavailability required the declarant, Thill, to be brought physically into court, put under oath, and assert the privilege in the trial court's presence. The successor court also read *Rosenthal* to mandate, in every case, the physical production of the declarant by the party seeking to prove unavailability for purposes of CRE 804(a)(1). Based on that analysis, the successor court concluded a new trial was required.

■ However, neither *Rosenthal* nor CRE 804(a)(1) requires the physical production of the declarant in every instance before a determination of unavailability can be made. The panel in *Rosenthal* stated only that the "mere suggestion" that the privilege "might" be asserted was insufficient to meet the foundational requirement of CRE 804(a)(1).

■ Nevertheless, here, contrary to the People's contention, we conclude the evidence before the trial judge was insufficient as a matter of law to support a finding of Thill's unavailability. Nor do the cases relied on by the People suggest a different result.

In *United States v. Thomas, supra*, the declarant was a co-defendant in a joint trial with the defendant. But, unlike the circumstances in *Thomas*, Thill was not a co-defendant in a joint trial with defendant. Their cases were severed, and therefore, Thill was not unavailable on that ground.

In *United States v. Flores, supra*, declarant's counsel informed the trial court in declarant's presence that he invoked the privilege. In contrast, Thill's counsel never informed the court—in his presence or outside of it—that Thill invoked the privilege. Nor was this a situation in which a child victim of a sexual assault was involved and the parents had refused to make the child available to testify at a retrial, as occurred in *People v. Arguello, supra*.

The People concede they had the burden of establishing a foundation for the admission of Thill's videotaped statements, and that a showing of unavailability was required as part of that foundation. *See Oldsen v. People, supra*. Their position is that Thill's

statements in the prior proceedings vigorously asserting his privilege against self-incrimination established he was unavailable at the time of defendant's trial.

However, none of the cases cited by the People suggests that a finding of unavailability may be supported solely by the trial court's statement that it had previously conducted proceedings involving the declarant in which the declarant had asserted his privilege against self-incrimination. This is what occurred here.

In *Blecha v. People, supra,* 962 P.2d at 940, the supreme court stated that: "The critical issue in determining [the witness'] availability was whether [he] was available to testify as a witness *at the time of trial.*" (emphasis added)

At the time of trial in this case, defendant's counsel represented to the court that, "I have reason to believe Mr. Thill is willing to come in here," and defense counsel repeatedly urged that the foundational requirements of CRE 804(a)(1) be satisfied.

Significantly, the prosecution did not oppose defense counsel's position regarding the foundational requirements of the rule. In fact, the prosecutors themselves brought *Rosenthal* to the trial judge's attention, and recommended that Thill be brought before the court as requested by defense counsel, or at least that Thill's defense attorney be brought before the court so the court could inquire if Thill would waive his privilege against self-incrimination.

> Prosecutor: I have a copy of [*People v. Rosenthal*], if the court wishes to look at it.
>
> Defense counsel: The declarant hasn't come in and said he won't testify.
>
> Prosecutor: *I think the Court could do this in two ways. I think it could simply ask [Thill's attorney] if her client would waive. Mr. Thill could be brought in.*
>
> Defense counsel: The case says that the declarant has to be brought in and assert the privilege so that the Court can find the privilege is, in fact, asserted. (emphasis added)

The trial judge declined to follow either suggestion and admitted the videotaped con-

fession. It was shown to the jury on the afternoon of March 8, 1999, and the jury was then sent home for the evening.

The following morning, before the prosecution had rested, defense counsel approached the bench, produced a letter directed to counsel, and again requested that the trial judge require Thill to appear before the court to assert the privilege. The letter stated that:

> I am writing this note in hopes it will reach you safely. I just want you to know that I am willing to testify in [defendant's] trial, in regard to the truth of his innocence.
>
> What the prosecution and the prosecution's lying witnesses are doing is wrong. They're trying to take a man's life away for a deed he didn't do, or want anything to do with!
>
> Sincerely,
>
> Nathan Thill

The trial judge denied the defense's request and took no further action as a result of the letter.

Under these circumstances, we conclude the trial judge's finding that Thill had previously asserted his privilege against self-incrimination at an earlier proceeding involving Thill was insufficient as a matter of law to satisfy the requirement of unavailability of CRE 804(a)(1) in defendant's trial. *See Blecha v. People, supra; People v. Rosenthal, supra.*

### B.

■ Alternatively, the People contend that even if the trial judge erred in admitting Thill's videotaped confession, the error was harmless beyond a reasonable doubt because Thill did not implicate defendant in any way. We disagree.

■ The prosecution bears the burden of proving that Thill's hearsay statement did not contribute to defendant's conviction or that the error was harmless beyond a reasonable doubt. *See Blecha v. People, supra.* If there is a reasonable probability that defendant could have been prejudiced by the error, the error cannot be deemed harmless.

*See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

 In determining whether an error was harmless beyond a reasonable doubt in a case such as this, a reviewing court should consider a number of factors including:

> The importance of the witness' testimony to the prosecution's case, whether the testimony was cumulative, the presence or absence of corroborating or contradictory evidence on the material points of the witness' testimony, the extent of the cross-examination otherwise permitted, and the overall strength of the prosecution's case.

*Merritt v. People,* 842 P.2d 162, 169 (Colo. 1992). *See Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182, 189 (1993)(in articulating harmless error standard, Supreme Court stated the inquiry is "whether the guilty verdict actually rendered in this trial was surely unattributable to the error.").

Thill's hearsay statement was an important part of the prosecution's case and was not cumulative. His statement was also damaging to defendant because it contradicted defendant's evidence on a crucial point. Thill did not place defendant at the scene of the crime, but insisted in his videotaped confession that he acted alone and without any plan or conspiracy. Thill's statement contradicted defendant's own statements to his friends admitting he was present at the crime scene.

Thill's confession also presented a graphic and cold-blooded account of the murder of Dia and supplied the racial motivation for it. Hence, defendant's friendship with Thill and the evidence of defendant's presence with him before, at, and shortly after the offense may well have contributed to the jury's verdict on some or all of the convictions, especially the conviction of ethnic intimidation. *See Blecha v. People, supra; Merritt v. People, supra.*

Accordingly, because there is a reasonable probability that defendant could have been prejudiced by the error, we reject the People's argument that the trial judge's erroneous admission of Thill's videotaped confession was harmless beyond a reasonable doubt. *See*

*Blecha v. People, supra; Merritt v. People, supra.*

### III.

In view of our conclusion that the unavailability requirement was not met, we need not address defendant's contention that the Confrontation Clause also was violated. Similarly, because we have concluded the successor court did not err in granting defendant's motion for a new trial based on the admission of the videotaped statement, we need not address the People's additional contention that the successor court erred in granting defendant a new trial based on certain statements made during the female victim's testimony.

The order granting a new trial is affirmed.

METZGER and PLANK, JJ., concur.