**The PEOPLE of the State of Colorado, Plaintiff–Appellee;**

v.

**Erik Brendan JENSEN, Defendant–Appellant.**

**No. 99CA1871.**

Colorado Court of Appeals, Div. II.

July 19, 2001.

As Modified on Denial of Rehearing Sept. 27, 2001.

Certiorari Denied Oct. 15, 2002.*

---

* Chief Justice MULLARKEY and Justice BENDER would grant as to the following issue:

Whether *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), overrides CRE 404(a)'s proscription against introducing irrelevant evidence of the victim's good character in a non-capital homicide case.

Ken Salazar, Attorney General, Julia A. Thomas, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Haddon, Morgan & Foreman, P.C., Norman R. Mueller, Rachel A. Bellis, Denver, CO, for Defendant–Appellant.

Opinion by Chief Judge HUME.

Defendant, Erik Brendan Jensen, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree murder, conspiracy to commit murder, accessory to a crime, and tampering with physical evidence. We affirm.

Defendant was arrested in connection with the murder of his friend's mother. Before the murder, the son (codefendant) told defendant and a third friend (accomplice) that he intended to kill his mother and asked defendant to help him clean up afterward. Following the murder, defendant and the accomplice assisted codefendant in cleaning the apartment where the murder occurred. Codefendant confessed to the murder and was tried separately from defendant.

Defendant testified at his trial that on the evening of the murder, he drove codefendant home and waited in the car for about thirty minutes smoking marijuana. He then walked up to the apartment where, to his surprise, the victim answered the door. As defendant entered the apartment, however, codefendant hit his mother in the head with a

fireplace tool. Defendant admitted that he provided codefendant with plastic wrap to suffocate the victim and that he "dropped" the fireplace tongs on the victim. Codefendant then used the tongs to strangle his mother.

In exchange for immunity, the accomplice testified at defendant's trial that defendant told him that he had hit the victim three times in the head with the tongs, and that the last time, the tool "got stuck in her head; and when he pulled it out, that's how the blood got on the ceiling." Defendant and codefendant paged the accomplice to come and help clean the murder scene, and when he arrived, defendant answered the door with blood on his face.

The accomplice also testified that codefendant had previously told him he was going to kill his mother that night because she had threatened to send him to a military school and that defendant was "scared shitless."

Following trial to a jury, defendant was convicted of first degree murder, along with the conspiracy and accessory charges. He was sentenced to life in prison without parole on the murder charge and concurrent sentences of twenty-four years and six years on the conspiracy and accessory counts.

This appeal followed.

## I.

Defendant first argues that the trial court denied him his right to confrontation of a witness by admitting the codefendant's hearsay statements to the accomplice under CRE 804(b)(3) as statements against penal interest. We do not agree.

In *People v. Newton*, 966 P.2d 563 (Colo. 1998), the court articulated a three-part test to determine whether a statement inculpating a defendant may be admitted under CRE 804(b)(3) and will also satisfy the United States and Colorado Constitutions: (1) the witness must be unavailable, as required by CRE 804(a); (2) the statement must tend to subject the declarant to criminal liability and must be the kind of statement that a reasonable person in the declarant's position would not have made unless the person believed it to be true; and (3) corroborating circum-

stances at the time the statement was made must demonstrate the trustworthiness of the statement. In this third inquiry, the court should consider when and where the statement was made, what prompted the statement, how the statement was made, and the substance of the statement.

In addition, the court held in *Newton* that a precise statement against penal interest and related collaterally neutral statements are admissible under CRE 804(b)(3) unless they are so self-serving as to be unreliable or the declarant had a significant motivation to curry favorable treatment.

Here, the trial court found that codefendant was unavailable as a witness and that his statement relating his intention to kill his mother was against his penal interest and was not self-serving. The court also found that the codefendant lacked motivation to curry favorable treatment, because his statement was made to a friend and not to a law enforcement officer.

## A.

■ Initially, we reject defendant's argument in his reply brief that the People failed to prove that codefendant was unavailable under the decision in *People v. Barnum*, 23 P.3d 1237 (Colo.App.2001)(*cert. granted*, June 11, 2001).

Defendant appeared to stipulate codefendant's unavailability both at the suppression hearing and in his opening brief on appeal to this court where he acknowledged that "the statements were clearly against the unavailable co-defendant's penal interest." *See People v. Czemerynski*, 786 .P.2d 1100 (Colo.1990)(issues not raised in appellant's initial brief will normally not be considered on appeal).

Moreover, in *Barnum*, there was evidence that the codefendant wished to testify, which is not the case here. Under these circumstances, we perceive no reversible error in the court's determination that codefendant was unavailable under CRE 804(a)(1). *See Barnum, supra* (neither case law nor CRE 804(a)(1) require the physical production of

the declarant in every instance before a determination of unavailability can be made).

### B.

Defendant agrees that the statements were against codefendant's penal interest, but argues that the trustworthiness factor has not been satisfied because the statements were made to and reported by an immunized accomplice. We are not persuaded.

While a codefendant's statements introduced without the benefit of cross-examination are inherently unreliable when the government is involved in the statements' production, *Lilly v. Virginia*, 527 U.S. 116, 137, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999); *Stevens v. People*, 29 P.3d 305 (Colo.2001); *People v. Farrell*, 10 P.3d 672 (Colo.App. 2000)(*cert. granted* Oct. 10, 2000), such is not the case here.

Rather, here, codefendant was not in custody, his statements were not made to police, nor were they a result of leading questions or coercion, or made in the hope of any lenity or favorable treatment. Instead, the statements were made to a friend who testified about them in court, who was subject to cross-examination, and whose own credibility was a question for the jury to determine. We therefore conclude that the court did not err in admitting the statements.

### II.

Defendant next contends that the admission of hearsay statements made by the victim violated the rules of evidence and violated his right to confront witnesses against him. We do not agree.

At issue are the victim's statements to her husband and to a close friend describing a confrontation she had with defendant and the accomplice. The husband testified that the victim had called him at work, extremely upset and crying, and told him that defendant and the accomplice had come by while she was in the driveway washing her car. The two teenagers got out of their car, approached her "very menacingly" and called her names. The victim's friend provided similar testimony.

At a pretrial hearing, the trial court deemed the statements admissible under the residual hearsay exception of the former CRE 803(24), now CRE 807. We review evidentiary challenges that raise constitutional concerns under a harmless error standard. *Blecha v. People*, 962 P.2d 931 (Colo. 1998).

*People v. Fuller*, 788 P.2d 741, 744 (Colo. 1990), outlines five prerequisites to admission of statements under the residual hearsay exception:

the statement is supported by circumstantial guarantees of trustworthiness; the statement is offered as evidence of material facts; the statement is more probative on the points for which it is offered than any other evidence which could be reasonably procured; the general purposes of the rules of evidence and the interests of justice are best served by the admission of the statement; and the adverse party had adequate notice in advance of trial of the intention of the proponent of the statement to offer it into evidence.

Using this framework, the trial court found that the statements were supported by circumstantial guarantees of trustworthiness. Although the court focused on the fact that the statements were corroborated by defendant himself, the record indicates that the victim's statements had sufficient indicia of reliability to satisfy constitutional concerns. *See Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)(relevant circumstances include only those that surround the making of the statement).

In considering the trustworthiness of a statement, courts should examine the nature and character of the statement, the relationship of the parties, the probable motivation of the declarant in making the statement, and the circumstances under which the statement was made. *See Fuller, supra.*

Here, the victim volunteered spontaneous statements recounting the incident to her husband and to a close friend whom she had known for years. Her description of the incident was not self-serving, nor did she have an apparent motive to lie. She had personal knowledge of the events she de-

scribed, and there was no reason to question her ability to perceive, remember, or recount the incident.

The court further found that the evidence tended to establish a hostile relationship between the victim and defendant. Defendant's motivation to participate in killing the victim is a material fact. *See Fuller, supra.* In a homicide trial, evidence of prior threats, mistreatment, or malice by the defendant toward the victim is admissible to show the defendant's motive and culpable mental state. *People v. Gladney,* 194 Colo. 68, 570 P.2d 231 (1977).

Because the victim was deceased, the court concluded that the statements were more probative than any other available evidence portraying her relationship with defendant. The court also observed that "the interests of justice are also promoted by having the complete facts surrounding an incident available to the jury."

Because defendant concedes that he received sufficient notice of the People's intent to introduce the statements at trial, we conclude that all of the factors mandated by CRE 807 and *Fuller* are satisfied in this case. Thus, we perceive no error in the trial court's admission of the victim's statements.

### III.

Defendant also argues that the prosecution elicited improper evidence of the victim's good character. We perceive no reversible error.

During direct examination, the victim's husband, mother, and best friend testified regarding positive attributes of the victim's character. Because defendant failed to object to any of this testimony, we review only for plain error. *See Wilson v. People,* 743 P.2d 415 (Colo.1987).

Prosecutors are allowed to present crime victims as real persons who suffered real injuries. *See Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)(prosecution may argue the human cost of the crime and the uniqueness of the victim); *People v. Marin,* 686 P.2d 1351, 1355 (Colo.App.1983) ("Death is a very personal

concept and one which, if spoken of in purely an abstract, antiseptic manner, is drained of its meaning.").

Consequently, we perceive no error, much less plain error, in the People's portrayal of the victim.

### IV.

Defendant also contends that prosecutorial misconduct, both in cross-examination of defendant and in closing statements, requires reversal. We are not persuaded.

Defendant specifically complains of three questions during his cross-examination, which the district attorney withdrew upon defense objection. One question classified defendant's testimony as "new," another described defendant as "cool, calm, and collected" after the murder, and the last described defendant as the "best dressed teenager that's come into this courtroom." Defendant also argues that the prosecutor improperly characterized the murder as a "slaughter" and that he "gratuitously expressed his agreement" with defendant's testimony that he had done "nothing smart" on the night of the murder.

Because defendant made no contemporaneous allegation of prosecutorial misconduct with regard to the withdrawn questions, and did not object to the final two comments, we review only for plain error to determine if defendant's substantial rights were affected. *See People v. Constant,* 645 P.2d 843 (Colo.1982). Unless a prosecutor's misconduct is "glaringly or tremendously" improper, it is not plain error under Crim. P. 52(b) where no objection to the behavior was raised. *People v. Simbolo,* 188 Colo. 49, 532 P.2d 962 (1975). See also *Wilson v. People,* 743 P.2d 415 (Colo. 1987) (plain error occurs when the fundamental fairness of the trial is so undermined as to cast doubt on the reliability of conviction).

### A.

Defendant directs us to no Colorado case law supporting his proposition that a prosecutor's withdrawal of a question before an answer is provided constitutes mis-

conduct, nor is there any indication that the district attorney made or withdrew his inquiries in bad faith. Further, defendant fails to show any prejudice resulting from the comments. In the absence of actual prejudice, even improper prosecutorial conduct does not constitute reversible error. *People v. Roy,* 723 P.2d 1345 (Colo.1986). Accordingly, we perceive no plain error here.

### B.

 We similarly reject defendant's contention that the prosecutor's closing argument was improper and prejudicial, requiring reversal.

Again, defendant made no contemporaneous objection, and thus we review only for plain error. "[P]rosecutorial misconduct in closing arguments rarely, if ever, is so egregious as to constitute plain error...." *People v. Sepeda,* 196 Colo. 13, 25, 581 P.2d 723, 732 (1978).

After a review of the record, we conclude that none of the prosecutor's comments, even if improper, warrant reversal.

### V.

Lastly, defendant contends that the trial court improperly struck a defense exhibit. We perceive no reversible error.

Trial courts have broad discretion in determining the admissibility of evidence. Absent an abuse of discretion, a trial court's evidentiary rulings will be affirmed. *People v. Ibarra,* 849 P.2d 33 (Colo.1993).

A defense expert testified during trial that in his opinion, defendant's marijuana intoxication, coupled with acute stress, prevented defendant from formulating the specific intent required to convict him of first degree murder. The expert used a diagnostic criteria exhibit for acute stress disorder to explain his testimony.

Although the prosecution's objection to the expert testimony was overruled, no objection was made as to the exhibit itself until the jury instruction conference. At that time, the court agreed to strike the exhibit because it:

lays out a diagnostic criteria [sic] ... which would, I think, have a tendency to suggest to the jury that this might be a defense to the crime, even though it's not dealt with in that manner in the instructions. And the result, I think, would be confusing.

We perceive no abuse of discretion in the court's determination to strike the exhibit.

The judgment is affirmed.

NEY and CASEBOLT, JJ., concur.