COLORADO COURT OF APPEALS                                     **2016COA184**

Court of Appeals No. 11CA1182
City and County of Denver District Court No. 10CR81
Honorable Edward D. Bronfin, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Peter Wilson Sund Beller,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE MILLER
Graham and J. Jones, JJ., concur

Announced December 29, 2016

Cynthia H. Coffman, Attorney General, John J. Fuerst III, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Jason C. Middleton,
Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Peter Wilson Sund Beller,[1] went to trial for felony murder and two counts of aggravated robbery.  The aggravated robbery charges — along with the noncharged offenses of attempted aggravated robbery, robbery, and attempted robbery — served as predicate offenses underlying the felony murder count.  The jury acquitted Beller of both aggravated robbery counts but hung on the felony murder count.  The trial court held a second trial on the felony murder count with robbery and attempted robbery serving as predicate offenses.  The second jury convicted Beller of felony murder.

¶ 2    We are unaware of authority from the United States Supreme Court or from Colorado directly controlling Beller's argument that his retrial for felony murder violated the Double Jeopardy Clause.  We ultimately conclude that it did not.  We then conclude that admitting a codefendant's hearsay statements did not violate the hearsay rules or our state Confrontation Clause.  We therefore affirm Beller's felony murder conviction.

_____

[1] The mittimus and papers filed in this court spell defendant's last name as Beller.  At trial, however, defendant spelled his name Bellar, and most of the papers filed in the trial court used that spelling.  For convenience, we adhere to the spelling used in the mittimus and by the parties in this court.

1

## I. Background

¶ 3      Beller arranged to buy two ounces of marijuana through a man named Justin Singleton. Singleton brought Beller to his father's house to complete the deal.

¶ 4      According to Singleton, he retrieved the two ounces of marijuana from his father's room and gave it to Beller. Beller then pulled out a gun and demanded the rest of the marijuana in the house. Singleton alerted his father that Beller had a gun. Singleton's father retrieved his own gun and walked into the hallway. Several shots were fired and Singleton's father fell to the ground. Singleton grabbed a gun and started shooting; Beller fled.

¶ 5      Beller described a different version of these events. He said his friend, Scott Shaffer, drove him to meet Singleton. Shaffer stayed in the car when Beller got out and accompanied Singleton and one of Singleton's friends to a house. While Singleton discussed the deal with his father in another room, Beller took out $600, set it on a table, and walked towards the other room to "haggle" with Singleton. As he walked he heard feet "shuffling," looked back, and saw Singleton's friend running out the door; his money was gone. Beller pulled out a gun to chase Singleton's

friend. Singleton saw the gun and ran into another room. Singleton's father then appeared and shot Beller in the chest. Although Beller did not remember shooting his gun, he was "pretty sure" he did. Singleton then shot at him, but he was able to run out of the house. Shaffer took him to the hospital.

¶ 6    Beller shot Singleton's father in the head during these events and the father died as a result.

¶ 7    The People charged Beller with felony murder (with Singleton's father as the victim), two counts of aggravated robbery (with Singleton and his father as victims), and menacing (with Singleton's friend as the victim). The trial court's jury instructions identified aggravated robbery, attempted aggravated robbery, robbery, and attempted robbery as predicate offenses for the felony murder count. The court also instructed the jury about the elements of aggravated robbery, robbery, and attempt. The verdict forms on the aggravated robbery counts did not permit the jury to consider any lesser included offenses. The jury found Beller not guilty of both aggravated robbery counts, guilty of menacing, and hung on the felony murder count. The trial court declared a mistrial on the felony murder count.

¶ 8    Before the second trial, Beller moved for a judgment of acquittal on the felony murder count, arguing that the Double Jeopardy Clause precluded another trial on that count. The trial court denied Beller's motion. In the second trial, the court's instructions identified only robbery and attempted robbery as predicate offenses for felony murder, but those predicate offenses were not charged as stand-alone offenses. The jury found Beller guilty of felony murder.

## II. Discussion

¶ 9    On appeal, Beller argues that his retrial for felony murder violated the Double Jeopardy Clause. He also argues that the court violated the hearsay rules and his confrontation rights by admitting several of Shaffer's hearsay statements.

### A. Double Jeopardy

¶ 10    We review double jeopardy claims de novo. *People v. Frye*, 2014 COA 141, ¶ 30.

¶ 11    The Double Jeopardy Clause guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *accord* Colo. Const. art. II, § 18. This language embodies two rules bearing on this case. First, a

4

defendant may not be subjected to successive prosecutions for the same offense after an acquittal. *Monge v. California*, 524 U.S. 721, 727-28 (1998). Second, issue preclusion prevents the prosecution from litigating again any issue that was necessarily decided by a jury's not guilty verdict in a prior trial. *See Yeager v. United States*, 557 U.S. 110, 119 (2009). Beller argues that both rules were violated when he was retried for felony murder after the first jury found him not guilty of aggravated robbery.

### 1. Successive Prosecutions for the Same Offense

¶ 12 Beller's argument starts with his claim that felony murder and all four original predicate offenses — aggravated robbery, attempted aggravated robbery, robbery, and attempted robbery — are the "same offense" for double jeopardy purposes. It is unclear whether the People dispute this claim, but, in any event, we agree with it.

¶ 13 For double jeopardy purposes, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). By definition, a greater offense and any lesser offense included in it are the "same" for double jeopardy purposes. *Brown v. Ohio*, 432 U.S.

161, 168 (1977). A predicate felony is a lesser included offense of the felony murder count it supports. *Meads v. People*, 78 P.3d 290, 295 (Colo. 2003). Robbery is a lesser included offense of aggravated robbery. *People v. Borghesi*, 66 P.3d 93, 97 (Colo. 2003). And a charged offense necessarily includes an attempt to commit the charged offense. *See* Crim. P. 31(c). All of this means that the felony murder count against Beller and all four original predicate offenses were the same offense for double jeopardy purposes. We now turn to whether Beller was subjected to successive prosecutions.

¶ 14 The Double Jeopardy Clause, however, applies only if there has been an event — an acquittal, for example — that terminates the original jeopardy. *Richardson v. United States*, 468 U.S. 317, 325 (1984). The failure of the jury to reach a verdict, however, is not an event that terminates jeopardy. *Id.* So a retrial following a hung jury does not offend the Double Jeopardy Clause. *Id.* at 324.

¶ 15 Beller, however, focuses not on the first jury's failure to agree about felony murder but on its not guilty verdicts on the aggravated robbery counts. He assigns two consequences to the not guilty verdicts. First, he argues that the Double Jeopardy Clause

6

precluded a second trial for the greater offense of felony murder after a jury acquitted him of the lesser included aggravated robbery counts. Second, he argues that the first jury's verdicts acquitted him of aggravated robbery and the lesser included offenses of attempted aggravated robbery, robbery, and attempted robbery. As a result, he continues, the Double Jeopardy Clause precluded further litigation over his guilt or innocence of robbery or attempted robbery, the predicate offenses in his second trial. We are not persuaded.

¶ 16 Fatal to Beller's arguments is the fact that the People prosecuted him for felony murder and the aggravated robberies through the same information in the same case. In our view, the consequence of that fact is that Beller was not subjected to successive prosecutions.

¶ 17 Arguing otherwise, Beller relies on cases, such as *Brown*, in which a defendant was charged separately with crimes that constituted the "same offense." The defendant in *Brown* was charged with and convicted of joyriding after he was caught driving a stolen car. 432 U.S. at 162. He was later charged with and pleaded guilty to auto theft for stealing the car. *Id.* at 162-63.

Applying the *Blockburger* test, the Court concluded that joyriding and auto theft constituted the same offense for double jeopardy purposes. *Id.* at 168. This led the Court to further conclude that the defendant had been twice placed in jeopardy for the same offense. *Id.* at 169-70.

¶ 18　　Because *Brown* involved separate prosecutions, it does not address the situation before us, in which the People prosecuted Beller for lesser and greater offenses in a single case through a single information. The same is true of the other cases Beller relies on that discuss separate prosecutions. *See Illinois v. Vitale*, 447 U.S. 410, 411-13 (1980) (juvenile was convicted of failing to reduce speed to avoid an accident and was subsequently charged with involuntary manslaughter); *Harris v. Oklahoma,* 433 U.S. 682, 682 (1977) (the defendant was convicted of felony murder and later convicted under a separate information of a lesser included crime); *United States v. Gooday*, 714 F.2d 80, 82 (9th Cir. 1983) (noting that an "acquittal on the explicit charge therefore bars subsequent indictment on the implicit lesser included offenses").

¶ 19　　Stronger support for Beller's position is *Wilson v. Czerniak,* 355 F.3d 1151 (9th Cir. 2004). In *Wilson,* a jury acquitted the

defendant of intentional murder yet hung on greater counts of aggravated felony murder. *Id.* at 1152. The court concluded that the Double Jeopardy Clause precluded trying the defendant again for aggravated felony murder after he had been acquitted of the lesser included offense. *Id.* at 1157. We agree with Beller that *Wilson* suggests that he could not be retried for felony murder after being acquitted of the aggravated robbery counts. But we are not bound by a federal circuit court's interpretation of the Federal Constitution. *See People v. Rossman,* 140 P.3d 172, 176 (Colo. App. 2006).

¶ 20 We are persuaded not to follow *Wilson*'s interpretation of the Double Jeopardy Clause for two reasons. First, the *Wilson* court relied on *Brown* to support the proposition that "a criminal defendant may not be retried for a crime following an acquittal or conviction on a lesser included or greater inclusive offense." 355 F.3d at 1154. But, as we discussed earlier, *Brown*, unlike *Wilson* and this case, involved separate prosecutions. Yet the *Wilson* court did not acknowledge this difference or explain why it should not matter.

¶ 21      Second, in order for the defendant in *Wilson* to have been found guilty of the greater offense of aggravated murder, each of the elements of the lesser offense of the intentional murder count had to have been established.  *Id.* at 1155.  Thus, trying the defendant again on aggravated murder necessarily would have given the prosecution a second chance to relitigate the elements of intentional murder, one or more of which the jury had already found lacking.  *See Brown*, 432 U.S. at 165 (Double Jeopardy Clause protects the accused from attempts to relitigate facts underlying prior acquittal).  In this case, however, Beller could have been found guilty of the greater offense of felony murder without committing all of the elements of aggravated robbery because aggravated robbery was not the only predicate offense specified by the prosecution.  For example, the second jury could have found that Beller did not take anything of value, but nonetheless attempted to commit simple robbery — a predicate offense relied on by the prosecution in both trials.

¶ 22      Shortly after *Wilson,* a different panel of the Ninth Circuit concluded under similar circumstances that whether the relevant greater and lesser offenses are part of the same indictment "makes

10

all the difference" for double jeopardy purposes. *United States v. Jose*, 425 F.3d 1237, 1242 (9th Cir. 2005). The defendants in *Jose* were convicted of felony murder and predicate offenses. *Id.* at 1240. Their predicate offense convictions were affirmed and their felony murder convictions reversed on appeal. *Id.* The *Jose* panel rejected the defendants' argument that the Double Jeopardy Clause precluded retrial for felony murder, concluding that "final convictions on the underlying predicate felonies do not trigger double jeopardy protections against retrial of the greater offense originally charged under the *same* indictment in the *same* trial." *Id.* at 1248.

¶ 23    We are mindful of two differences between *Jose* and this case. First, in *Jose* the prosecution sought a retrial after an appeal; in this case the prosecution sought a retrial after a hung jury. Second, the defendants in *Jose* were convicted of lesser included offenses; Beller was acquitted of lesser included offenses.

¶ 24    Neither difference renders *Jose*'s analysis inapplicable here. Jeopardy continues "whether the retrial is precipitated by a hung jury or a defendant's successful reversal of conviction." *Id.* at 1244. And the *Jose* panel found insignificant for its purposes whether

11

jeopardy terminated on one charge because of a conviction as opposed to an acquittal. *Id.* at 1244-45. At bottom, this case shares with *Jose* the features that the panel considered relevant: "the greater and lesser included offenses were tried together under the same indictment, jeopardy terminated as to one of the offenses, but did not end on the charge sought to be retried." *Id.* at 1245.

¶ 25    We agree with the panel's analysis in *Jose* and apply it here to conclude that jeopardy did not terminate on the felony murder count after Beller's first trial even though he was acquitted of predicate offenses. And because jeopardy did not terminate on the felony murder count, the Double Jeopardy Clause did not preclude retrial on that count.

¶ 26    A division of the Court of Appeals of Arizona reached the same conclusion in a similar case. *See Lemke v. Rayes*, 141 P.3d 407 (Ariz. Ct. App. 2006). As relevant here, the defendant in *Lemke* was charged with felony murder with armed robbery as the predicate offense and was also charged with armed robbery. *Id.* at 410-11. The jury hung on the felony murder count and convicted the defendant of theft, a lesser included offense of armed robbery. *Id.* at 411. The *Lemke* division assumed that by convicting the

defendant of theft and leaving blank the armed robbery verdict form, the jury impliedly acquitted him of armed robbery. *Id.* at 412-13. Nevertheless, the division ultimately concluded that the Double Jeopardy Clause did not preclude another trial on the felony murder count: "Even though we have deemed [the defendant's] jeopardy on the armed robbery offense as terminated based on the concept of implied acquittal, the inability of the jury to reach a verdict on the felony-murder count at his first trial means that [the defendant's] jeopardy as to that count never terminated." *Id.* at 415; *see also Lemke v. Ryan,* 719 F.3d 1093, 1103-04 (9th Cir. 2013) (rejecting double jeopardy claim for same defendant on petition for habeas corpus relief); *Delgado v. Fla. Dep't of Corr.,* 659 F.3d 1311, 1330-31 (5th Cir. 2011) (relying on *Jose* to reject double jeopardy claim).

¶ 27    In addition, our conclusion accords with authority from the United States Supreme Court and another division of this court. The Supreme Court has declined to hold "that a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses

13

of the charge just concluded." *Ohio v. Johnson*, 467 U.S. 493, 501 (1984). A division of this court has also held that the Double Jeopardy Clause allows retrial on a greater offense if the jury deadlocks on that greater offense but convicts on a lesser included offense. *People v. Aguilar*, 2012 COA 181, ¶¶ 21-22. *Johnson* and *Aguilar* do not square with the principle underlying Beller's arguments — that an event terminating jeopardy on one count also terminates jeopardy on any other count in the same case that constitutes the "same offense" under *Blockburger*.

¶ 28 Contrary to Beller's argument, we do not think *Doubleday v. People*, 2016 CO 3, bolsters his case. In *Doubleday*, the supreme court held that "to establish that a defendant has committed or attempted to commit a predicate offense so as to support a felony murder conviction, the prosecution must prove beyond a reasonable doubt all elements of that predicate offense, including the inapplicability of any properly asserted affirmative defense." *Id.* at ¶ 26. As Beller concedes, *Doubleday* did not address "any double jeopardy concerns." For that reason, we decline Beller's invitation to attempt to apply the court's reasoning in *Doubleday* to support his double jeopardy arguments.

14

¶ 29     We note, however, that if the first jury had found Beller guilty of felony murder while acquitting him on aggravated robbery, *Doubleday* would not require reversal because the jury could have based such a verdict on the predicates of simple robbery or attempted simple robbery.  *See id.* at ¶¶ 2, 22.  That is precisely what the second jury did in the retrial conducted during the "continuation of the initial jeopardy" caused by the hung jury.  *See Yeager*, 557 U.S. at 118.

¶ 30     We also reject Beller's argument that his acquittals for aggravated robbery prevented further litigation as to his commission of the predicate offenses of robbery and attempted robbery in his second trial.  True, "subjecting [a] defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause."  *Smalis v. Pennsylvania*, 476 U.S. 140, 145 (1986).  But in *Smalis*, unlike in this case, the prosecution sought to resume trial on the same counts for which the defendants had already secured acquittals.  *Id.* at 144-45.  For that reason, we conclude that *Smalis* does not apply here, where the People sought a second trial only on a count for which jeopardy had not terminated.

## 2. Issue Preclusion

¶ 31 The Double Jeopardy Clause embodies the doctrine of issue preclusion, a doctrine providing "simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970); *see also Bravo-Fernandez v. United States*, 580 U.S. ___, ___, n.1, 137 S. Ct. 352, 356 n.1 (2016). In other words, the prosecution may not relitigate any issue that a jury necessarily decided through a not guilty verdict in a prior trial. *Yeager*, 557 U.S. at 119. An acquittal therefore might preclude retrial on counts on which the same jury hangs. *Id.* at 125. The doctrine will not apply, however, if "a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444 (citation omitted).

¶ 32 To determine what a jury necessarily decided, courts examine the record of the prior proceeding, including the pleadings, the evidence, the charge, and other relevant information. *Yeager*, 557 U.S. at 119-20. An unresolved count, however, is not "relevant"

16

information: "the fact that a jury hangs is evidence of nothing —
other than, of course, that it has failed to decide anything." *Id.* at
121, 125.

¶ 33     We disagree with Beller's argument that the first jury's not
guilty verdicts on the aggravated robbery counts necessarily
included a finding that he was not guilty of robbery and attempted
robbery, the predicate offenses in his second trial.  The aggravated
robbery counts required proof that Beller committed robbery — that
he knowingly took "anything of value from the person or presence of
another by the use of force, threats, or intimidation" — and that
"during the act of robbery or immediate flight therefrom" he
knowingly wounded or struck the person robbed or any other
person with a deadly weapon.  *See* §§ 18-4-301(1), 18-4-302(1)(b),
C.R.S. 2016.

¶ 34     The evidence at the first trial arguably conflicted about
whether Beller actually took marijuana from the victim's home.  So
the jury could have found Beller not guilty of the aggravated
robberies based on a finding that he did not take anything of value
from the victims.  *See* § 18-4-301(1).  The aggravated robbery
verdicts therefore did not necessarily resolve whether Beller

17

attempted to rob the victims. Alternatively, the aggravated robbery verdicts could have been the product of a finding that Beller did not *knowingly* wound or strike the victim with a deadly weapon based on Beller's repeated testimony that he did not remember firing his gun. *See* § 18-4-302(1)(b). And so the aggravated robbery verdicts did not necessarily resolve whether Beller committed robbery. For these reasons, issue preclusion did not bar Beller's second trial for felony murder with robbery and attempted robbery as predicate offenses.

¶ 35 We do not agree with Beller that the Supreme Court's decision in *Yeager* and our supreme court's decision in *Boulies v. People*, 770 P.2d 1274 (Colo. 1989), bar the second trial on felony murder.

¶ 36 In *Yeager*, the defendant was charged with securities fraud and insider trading. 557 U.S. at 113. The jury acquitted the defendant on the fraud counts but hung on the insider trading counts. *Id.* at 115. The prosecution sought to retry some of the insider trading counts, the trial court agreed, and the defendant took an interlocutory appeal, ultimately to the Supreme Court. The Court expressly held that double jeopardy "precludes the Government from relitigating any issue that was *necessarily* decided

18

by a jury's acquittal in a prior trial." *Id.* at 119 (emphasis added); *see also Bravo-Fernandez*, 580 U.S. at ___, 137 S. Ct. at 358 ("[I]ssue preclusion ordinarily bars relitigation of an issue of fact or law raised and *necessarily* resolved by a prior judgment.") (emphasis added).  It ultimately concluded that if the defendant's possession of insider information was a critical issue of ultimate fact for all of the charges, then a jury verdict that "necessarily" decided that issue in the defendant's favor would protect him from prosecution of any charge for which that is an essential element. *Yeager*, 557 U.S. at 123.  The Court then remanded the case to the lower courts to resolve that issue.  *Id.* at 126.

¶ 37     In this case, the acquittal on the aggravated robbery charges did not necessarily decide whether Beller engaged in simple or attempted robbery.  *Yeager*, therefore, does not support preclusion of Beller's retrial on felony murder relying only on the simple and attempted robbery predicates that were also before the first jury.

¶ 38     The defendant in *Boulies* was convicted and sentenced consecutively after a single trial on charges of both felony murder and aggravated robbery; the sole predicate for the felony murder charge was the same aggravated robbery.  770 P.2d at 1277.  The

19

supreme court declined to reach the constitutional double jeopardy issue because it concluded that the judicial rule of merger "require[d] that the defendant's separate conviction for aggravated robbery be vacated." *Id.* at 1281. The decision therefore has no direct application to this case, where there is no possibility of Beller facing convictions and consecutive sentences for both felony murder and the separate aggravated robbery charges of which he was acquitted.

¶ 39     We are also not persuaded by Beller's reliance on *People v. Wilson,* 852 N.W.2d 134 (Mich. 2014), *abrogated by Bravo-Fernandez,* 580 U.S. ___, 137 S. Ct. 352, and *Wright v. State*, 515 A.2d 1157 (Md. 1986), *abrogated on other grounds by Price v. State*, 949 A.2d 619 (Md. 2008). The *Wilson* majority concluded that the Double Jeopardy Clause precluded retrial of the defendant for felony murder after he had been acquitted of the only predicate felony. 852 N.W.2d at 136. Similarly, *Wright* held that the defendant's acquittal for the only predicate felony "was a bar to further criminal proceedings on a felony murder theory sharing a common essential element." 515 A.2d at 1167. *Wilson* and *Wright* share the same crucial difference from this case: the defendants in

those cases were acquitted of the single predicate offense underlying each of the felony murder counts. Here, in contrast, the first jury expressly acquitted Beller of aggravated robbery, only one of the four predicate offenses.

¶ 40    Accordingly, Beller's retrial and conviction of felony murder was not barred by issue preclusion.

## B.  Hearsay

¶ 41    Beller next argues that the trial court violated the hearsay rules and his confrontation rights when it admitted several statements that Shaffer made to other witnesses. We disagree.

### 1.  Factual Background

¶ 42    Shaffer did not testify at Beller's trial. The parties agreed that he was unavailable as a witness because he had invoked his Fifth Amendment privilege against self-incrimination. The trial court permitted several witnesses to testify about statements Shaffer made the night of the shooting.

¶ 43    Samantha Kern, Shaffer's girlfriend, testified that she was with her friend, Sunni Torres, at Torres' apartment the night of the shooting. According to Kern, Shaffer came to the apartment and told her the following:

- Beller had been shot and had shot Singleton's father.

- The car that Shaffer was driving was "around the block or a block away" when the shooting occurred.

- Beller told Shaffer that he had been shot and that he needed to go to the hospital. Shaffer told him that if he went to the hospital, he would be in trouble. Beller replied that he would die if he did not go to the hospital.

- At first, Shaffer did not think Beller had been shot, but then he realized Beller was hurt "because he was kind of passing out."

- Shaffer dropped Beller off a block away from the hospital.

¶ 44    Torres also testified, claiming that Shaffer said the following at her apartment:

- "[H]e's got this other kid that was going to set up this other kid's dad who grows marijuana for robbery."

- Something had gone wrong, Singleton's father had been shot, and Beller had gone to jail.

- "The father" had been shot "where the kid's dad grew marijuana."

- Shaffer was going to meet Beller's girlfriend.

¶ 45  Torres agreed on cross-examination, however, that her memory about exactly what Shaffer said at the apartment was "a little fuzzy" and that she was unsure whether she learned information from Shaffer, from other people, or from the media. She also said that Shaffer had not used the word "robbery."

¶ 46  Lauren Frink, Beller's girlfriend, testified that on the night of the shooting she spoke to Shaffer on the phone and then went to his house.  When she arrived, Shaffer said Beller was in the hospital.

¶ 47  The court admitted a video recording of a police interview with Frink.  In the interview, Frink said that Shaffer told her the following on the night of the shooting.

- Beller insisted that Shaffer take him somewhere so that Beller could rob the "place."

- Shaffer drove Beller and gave him a pistol.  The gun was not Shaffer's.  Beller was trying to rob Singleton.

- "The guy had some pot over there."

- Shaffer parked around the block or down the street.

- Shaffer heard one shot when he was sitting outside. A few moments later, he heard someone say, "Don't do it, [Beller]." Then he heard "a succession of shots."

- Shaffer thought Beller shot somebody.

- Beller came running out saying, "They got me. They got me." Beller also said, "I'm hit."

- Beller had been shot.

- Shaffer did not think Beller had been shot because there was not much blood. He tried to talk Beller out of going to the hospital, telling him that if he went to the hospital, he would be turning himself in. Beller said he would die unless he went to the hospital.

- Shaffer drove Beller to the hospital.

Frink told police that after she screamed at Shaffer, demanding that he admit that he gave Beller the gun, Shaffer said, "I gave him the gun." Frink also claimed during the interview that Shaffer was worried about the police showing up at his house when she spoke to him.

24

## 2.  Preservation

¶ 48    Beller asserts that admitting Shaffer's statements violated the Federal and State Confrontation Clauses.  He also contends that the statements were inadmissible hearsay.

¶ 49    The Federal Confrontation Clause is implicated only by testimonial hearsay.  *Michigan v. Bryant*, 562 U.S. 344, 354 (2011).  Beller neither challenges the trial court's ruling that Shaffer's statements were nontestimonial nor presents a meaningful argument related to the Federal Confrontation Clause.  So we will not consider his federal claim.  *See People v. Simpson*, 93 P.3d 551, 555 (Colo. App. 2003) (declining "to consider a bald legal proposition presented without argument or development").

¶ 50    The People claimed in the trial court that Shaffer's statements were admissible under the exceptions to the hearsay rule for excited utterances under CRE 803(2) and for statements against interest under CRE 804(3).  The trial court overruled Beller's objections with thoughtful analysis based on both exceptions.  On appeal, the People dispute whether Beller preserved the argument relied on in this court for challenging the admission of the statements under the excited utterance exception, but do not dispute that Beller's

arguments supporting his objections to admissibility as statements against interest were preserved. Because we conclude the statements at issue were properly admitted under the statements against interest exception, we need not consider whether the excited utterance arguments were preserved.

¶ 51 The People concede that Beller preserved his claim under Colorado's Confrontation Clause.

### 3. Colorado's Confrontation Clause

¶ 52 We review de novo whether a trial court violated a defendant's confrontation rights. *People v. Smalley*, 2015 COA 140, ¶ 20.

¶ 53 Our State Confrontation Clause bars a nontestimonial hearsay statement (if the defendant has not had a prior opportunity for cross-examination) unless the declarant is unavailable and the statement bears sufficient indicia of reliability. *People v. Phillips*, 2012 COA 176, ¶ 84. A statement is sufficiently reliable for confrontation purposes if it falls within a firmly rooted hearsay exception or if it holds particularized guarantees of trustworthiness. *People v. Hagos*, 250 P.3d 596, 624 (Colo. App. 2009).

¶ 54 To determine whether a statement bears particularized guarantees of trustworthiness, courts assess the totality of the

26

circumstances surrounding the statement. *See Bernal v. People*, 44 P.3d 184, 197 (Colo. 2002). Factors relevant to a statement's trustworthiness include where, when, and how the statement was made; to whom the statement was made; what prompted the statement; what the statement contained; and what may have motivated the declarant to make the statement. *See id.*

### 4. Hearsay and Statements Against Interest

¶ 55     Hearsay — an out-of-court statement offered in evidence to prove the truth of the matter asserted — is generally inadmissible. *See* CRE 801(c); CRE 802; *People v. McFee*, 2016 COA 97, ¶ 10. But there are many exceptions to the general rule prohibiting hearsay. One such exception permits courts to admit statements against the declarant's interest. CRE 804(b)(3). A statement against interest, as relevant here, is a statement that (1) "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made," it had so great a tendency to expose the declarant to criminal liability; and (2) "is supported by corroborating circumstances that clearly indicate its trustworthiness." *Id.*

27

¶ 56 A statement that inculpates the accused in addition to the declarant is admissible under CRE 804(b)(3) only if it satisfies three requirements. *Bernal*, 44 P.3d at 195-96. First, the declarant must be unavailable as a witness. *Id.* at 196. Second, the statement must tend to subject the declarant to criminal liability. *Id.* And third, the prosecution must establish by a preponderance of the evidence that corroborating circumstances clearly demonstrate the statement's trustworthiness. *Id.* To determine whether corroborating circumstances demonstrate the statement's trustworthiness, courts must limit their analysis to circumstances surrounding the statement itself; they should not rely on other independent evidence implicating the defendant. *Id.*

¶ 57 CRE 804(b)(3) allows courts to admit not only a precise statement against interest but also "related, collaterally neutral statements." *People v. Newton*, 966 P.2d 563, 578 (Colo. 1998).

¶ 58 The exception to the hearsay rule for statements against interest is not a "firmly rooted" exception. *Bernal*, 44 P.3d at 197. But CRE 804(b)(3)'s requirement that a statement against interest offered against an accused be supported by "corroborating circumstances" incorporates the Confrontation Clause's

28

requirement that a statement bear particularized guarantees of trustworthiness. *See Bernal*, 44 P.3d at 196-97, 199.

### 5. Analysis

¶ 59    To begin, we note that no one disputes that Shaffer was unavailable as a witness. So the unavailability requirement of both the hearsay exception for statements against interest and the Confrontation Clause is satisfied.

¶ 60    We turn, then, to whether Shaffer's statements tended to expose him to criminal liability and conclude that they did. This question focuses on whether a reasonable person in the declarant's position would not have made the statements unless the person believed them to be true. *Newton*, 966 P.2d at 576. Shaffer's statements exposed him to criminal liability because they describe him and Beller planning and attempting to rob the Singletons of marijuana. For that reason, a reasonable person in his position would not have made those statements believing them to be untrue.

¶ 61    We are not persuaded by Beller's arguments to the contrary. In his view, many of Shaffer's statements were not against Shaffer's own interest because they "attempted to shift blame" to Beller. But the mere fact that Shaffer's statements also implicated Beller does

not mean that they did not expose Shaffer to criminal liability. *Cf. United States v. Monserrate-Valentine*, 729 F.3d 31, 53 (1st Cir. 2013) (noting that the declarant's statement that he and four others robbed a truck was "plainly self-inculpatory, even though it also inculpated other members of [a] conspiracy"). Beller also argues that a reasonable person would not understand complicity liability or the crime of conspiracy, and therefore would not understand that Shaffer's statements exposed him to criminal liability. Although a reasonable person may not know the precise legal requirements of complicity or conspiracy liability, a reasonable person would know that participating in a crime could create criminal liability.

¶ 62 The question becomes whether Shaffer's statements are sufficiently supported by corroborating circumstances, a question that, under the circumstances of this case, incorporates the requirement of our State Confrontation Clause that the statements bear particularized guarantees of trustworthiness.

¶ 63 We agree with the trial court that the circumstances surrounding Shaffer's statements contain such guarantees. Shaffer made the statements at Torres' apartment and his own home to his girlfriend and two acquaintances. Moreover, the statements

occurred shortly after the events they described. All of these circumstances contribute to the statements' trustworthiness. *See People v. Jensen*, 55 P.3d 135, 139 (Colo. App. 2001) (concluding that a codefendant's statements were trustworthy because they were made to a friend while the codefendant was not in police custody).

¶ 64 The circumstances surrounding Shaffer's statements contrast sharply with those found in the cases on which Beller principally relies, *Lilly v. Virginia*, 527 U.S. 116 (1999), and *Stevens v. Ortiz*, 465 F.3d 1229 (10th Cir. 2006). In both *Lilly* and *Stevens*, the declarant was in custody and made statements in response to police questioning. *Lilly*, 527 U.S. at 139; *Stevens*, 465 F.3d at 1240-42. Further,

> [c]ourts have long recognized that an accomplice's confession in police custody "is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another."

*Stevens*, 465 F.3d at 1241 (quoting *Lee v. Illinois*, 476 U.S. 530, 545 (1986)). The circumstances surrounding Shaffer's statements,

31

unlike those surrounding custodial confessions, do not suggest that Shaffer had a motive to shift blame, curry favor, or divert attention to another. *See Jensen*, 55 P.3d at 139 (noting that statements made to a friend were not "a result of leading questions or coercion, or made in the hope of any lenity or favorable treatment").

¶ 65 Beller also argues that Shaffer's statements were unreliable because of credibility problems of the witnesses who described Shaffer's statements at trial. But those witnesses were subject to cross-examination, so their "credibility was a question for the jury to determine." *Id.*

¶ 66 For these reasons, we conclude that the trial court did not err when it admitted Shaffer's statements under the hearsay exception for statements against interest. Nor did admitting them violate the Colorado Confrontation Clause.

### III. Conclusion

¶ 67 The judgment is affirmed.

JUDGE GRAHAM and JUDGE J. JONES concur.